### THE AMSTERDAM.

### THE ROTTERDAM.

#### (District Court, S. D. New York. September 26, 1907.)

SHIPPING—DAMAGE TO CARGO—LIABILITY OF SHIP.

A claim that shipments of tobacco from Holland ports to New York, made on two different vessels, were damaged by sea water on the voyages through the unseaworthiness of the vessels or negligent stowage, *held* not sustained by the evidence, which tended to show that the tobacco was delivered in the same condition in which it was received, and that it was probably damaged previously on its shipment from Sumatra to Holland.

In Admiralty. Suits for damage to cargo.

Eustace Conway, for libellant.

Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. These actions were brought by the Mannheim Insurance Company, the assignee of Rothschild & Brother, to recover from the steamships Amsterdam and Rotterdam the damage alleged to have been caused to certain Sumatra tobacco, shipped on the said vessels for New York by the said assignors.

The claim against the Amsterdam is that the steamer on or about the 6th of May, 1901, received on board at Rotterdam, in the Netherlands, 128 cases of tobacco in good order, and duly issued a bill of lading agreeing to deliver the same in New York in the same good order; that she arrived at her port of destination on or about the 20th of May, 1901, and delivered the tobacco to the consignees but not in the condition in which it was received but in bad order and condition, through being damaged by salt water, which was due to the unfitness of the hold of the steamer in which the tobacco was stowed and the carelessness and negligence in stowing and handling the same. That the said water soaked through the boards of the cases which contained the tobacco and soaked the same, whereby the owners were damaged in the sum of $7,537.88.

The claim against the Rotterdam is of a similar character for loss on 32 casks of tobacco, shipped about the same time and said to amount to $1,788.30.

The answers of the claimant, the Holland America Line, in both instances deny all charges of negligence and allege that the shipments were made at Amsterdam, where the claimant had offices as well as at Rotterdam; that the cases containing the tobacco were of wood and effectually concealed the contents so that the carrier could only know the apparent external condition of the packages; that the shipments were delivered at the claimant's pier in Amsterdam from barges or lighters; thence they were forwarded in closed railway cars to the steamer in Rotterdam so that they were there laden on board without having received any water or other damage since they had come into the claimant's custody; that the tobacco of the firm of Rothschild & Brother, with other tobacco, was well and carefully stowed under deck of the steamer and discharged in the same good external order and condition as when shipped and was so received and accepted and receipted for by the consignee; that it was also examined by United States officials on the dock and at public stores; that the shipment was presumably from a larger quantity of similar tobacco carried in the Amsterdam, the next succeeding steamer, which arrived in New York May 20, 1901; that this lot of tobacco was also received for shipment in apparent good order and condition and was so delivered and accepted on the dock in New York; that the first intimation to the claimant of any claim for damage on this shipment or the Rotterdam was received on June 4th and 7th, together with notice of claim on the Amsterdam shipment, to the effect that 160 bales of tobacco from the two steamers were seriously damaged by water.

There are some slight discrepancies in the dates between the allegations of the libel and of the answers, but of no material importance.

Shortly after the actions were at issue they were consolidated and subsequently tried as one.

It appears that the Rotterdam sailed on May 2nd and the Amsterdam on the 9th. The libellant's tobacco on these vessels was part of a shipment from Sumatra, brought to Amsterdam by a long sea voyage. Another shipment, consisting of 71 bales, was brought to this country by the steamer Statendam: Mr. Putnam of Putnam, Kissam & Koehler, libellant's appraisers, examined this tobacco as well as the libellant's, and on June 7th, 1901, the firm wrote to the claimant that they found the tobacco badly damaged by contact with sea water, even more badly than the tobacco in suit; they further said:

"From the appearance of these cases we do not believe the damage to this tobacco occurred on the three steamers in question. We think it probable that all these cases were wet before shipment at Rotterdam. There is no doubt, however, that this tobacco was damaged after having been packed in cases at Amsterdam."

The tobacco came to Amsterdam in bales but was there casually examined and repacked in bales and then in new wooden cases made to fit the bales. No damage was noticed to the bales at this time, nor in the subsequent handling up to the time of their being in store on this side, when the warehouseman opened the packages and found the bales

stained and a further examination developed considerable damage. It is urged by the libellant that this damage was due to salt water but that claim has been vigorously disputed and the preponderance of evidence is not such as to base any reliable finding as to liability upon that fact. Preceding the delivery to the Holland Line the tobacco had been transported a long distance over salt water and it may as well be that the damage was received in such transportation as upon these steamers. Assuming, however, that it was salt water damage, the evidence is not sufficient to fasten responsibility therefor upon these steamers. It was held in The Folmina (D. C.) 143 Fed. 636 (affirmed 153 Fed. 364, but subsequently certified to the Supreme Court on the question of burden of proof), that if the ship shows there was no negligence on its part, or of the carrier in outfitting her for the voyage and that the ship was sound as to its plates, pipes, rivets and hatches, that neither imagination nor experience suggests any way for water to enter that is not negatived or at least that the carrier did not contribute to, then the libel must be dismissed even assuming that the cargo was damaged by salt water while on the voyage. The foregoing is extracted in substance from the libellant's brief and therein it is conceded that such a doctrine is the one the libellant is required to meet.

It is claimed, therefore, that the Amsterdam received the cases in good order, and while they were apparently in the same condition when delivered in New York, they were in fact considerably damaged, though it was not ascertained till subsequently. Thirteen cases out of the shipment were opened by the Custom House weighers in New York but nothing wrong discovered then; much weight, however, should not be attached thereto as no careful examination was made for damage. No discovery of damage was made until the warehouseman took charge of and opened the cases, when he noticed the same. He said:

"The side of the bale was black against the matting—the yellowish matting that was inside the case,—it was a black stain on the yellow matting"

—and sent word to his clients, the Messrs. Rothschild, on the 27th day of May, 1901.

The libellant's claim is that the steamer was unseaworthy as to lower hold 2, where the tobacco was probably stowed, in being under a wooden deck, 2 or 3 inches thick, on top of which was a steerage cabin. The deck had a hatch composed of several small hatches which were not caulked though covered with tarpaulins. The log showed that considerable water was shipped on the 12th and 13th of May which, it is urged, must have found its way to the tobacco, it not being sufficiently protected. It is suggested that "some slight damage," noted in the log, would have become dry in the 8 or 9 days left of the voyage. There is some doubt as to correctness of the log, the testimony of the officers of the steamer being to the effect that it was a good voyage without any rough weather. But whether it was rough or not, I fail to see any liability on the part of the ship. It is admitted by the libellant that there was no perceptible damage to the cases and it is difficult to understand how such a damage as is claimed here could

have occurred without showing on the cases. Moreover the hatch was adequately protected by tarpaulins, even if the covers were off.

As to the Rotterdam, she sailed May 2d and reached New York on the 12th. The 32 cases, involved herein, were probably stowed in the between decks in No. 2 hold and lower part of No. 2 and No. 4 holds. There was very little bad weather on this voyage. The tobacco, it is claimed, was damaged to the extent of 23½ per cent. and it is admitted by the libellant that no opportunity for the entrance of sea water has been shown into the places mentioned. In connection with this vessel the libellant claims that salt water damage having been shown, the explanation of the place of stowage of the injured cases is due from the claimant. The answer to this suggestion is that the claimant has shown the proper handling and delivery of the tobacco. The testimony in so showing excludes any consideration of the suggestion.

I find that the tobacco on both vessels was carefully handled and properly stowed in the holds. It is not probable that the damage subsequently found to tobacco transported on these vessels, and also on the Statendam about the same time, could have occurred on the vessels. It is much more likely that it happened before.

The weights of the tobacco have a strong tendency to show that the damage did not occur while it was in the claimant's custody. Tobacco increases very much in weight when wet. The cases were weighed at the warehouse in Amsterdam, then at the pier there, then on the claimant's pier in Hoboken, then by the Custom House weighers, then at Palmer's Warehouse, and very little difference appeared. In a few instances there is a slight variation, but not enough in any instance to affect a belief that if any such damage had occurred on the vessels, the scales would have shown it.

It is not necessary to determine when or where the damage occurred. It is sufficient to conclude that it did not occur by any fault of these steamers.

Libels dismissed.