## CAU *v.* TEXAS AND PACIFIC RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIR- CUIT.

No. 57. Argued April 8, 1904.—Decided May 16, 1904.

While primarily the responsibility of a common carrier is that expressed by the common law and the shipper may insist upon such responsibility, he may consent to a limitation of it, and so long as there is no stipulation for an exemption which is not just and reasonable in the eye of the law the responsibility may be modified by contract. It is not necessary that an alternative contract be presented to the shipper for his choice. A bill of lading is a contract and knowledge of its contents by the shipper will be presumed and a provision therein against liability for damages by fire is not unjust or unreasonable. It is not necessary that there be an independent consideration apart from that expressed in the bill of lading to support a reasonable stipulation of exemption from liability.

While the burden may be on the carrier to show that the damage resulted from the excepted cause, after that has been shown the burden is on the plaintiff to show that it occurred by the carrier's own negligence from which it could not be exempted.

THIS is an action to recover the value of cotton delivered by plaintiff to defendant, to be transported over its railroad from Texarkana, Texas, to New Orleans. The cotton was destroyed by fire while in the custody of defendant.

The action was originally brought in the Civil District Court of the Parish of Orleans and removed on the petition of defendant to the Circuit Court of the United States for the Eastern District of Louisiana. The case was tried to a jury,

which, under the instructions of the court, rendered a verdict for defendant, upon which judgment was entered dismissing the suit with costs.    113 Fed. Rep. 91.

The main question presented by the record is the effect of a provision in the bills of lading delivered by defendant to plaintiff, exempting it from liability for damages caused by fire. Incidentally a question arises as to the burden of proof.   At the time of the delivery of the cotton there were four bills of lading issued by defendant—three exactly alike and the fourth substantially like the other three in all that is material to this case.    They all contain the following provision: "That neither the Texas and Pacific Railway Company nor any connecting carrier handling said cotton shall be liable for damage to or destruction of said cotton by fire.   .   .   ."

For the purpose of showing the delivery of the cotton to the defendant the plaintiff introduced in evidence the bills of lading, but without prejudice to his claim that the provision quoted was not binding in the absence of a consideration therefor.  The court admitted the bills of lading, with that limitation.

The other evidence in the case was that the bills of lading in blank were obtained from the defendant's agent by plaintiff's agent, and three of them made out by the latter at his office. The record leaves doubtful whether the other bill of lading was prepared by him or by the agent of defendant.  The former, however, testified that he did not know the fire clause was in the bills of lading, and further testified as follows:

"A. When I applied to the agent of the Texas and Pacific railroad for a rate to New Orleans on the cotton I was going to ship he told me I could get but one rate, 60 cents per 100 pounds; that that was the rate of the other roads.  And I gave them the cotton because it was the most direct line to New Orleans.  I simply went there to get the rate, and I simply gave them the cotton at that rate which they gave me, 60 cents per 100 pounds."

He also testified that he did not want to know the lowest

rate; that he asked for the correct rate, he knew there was but one rate, all of the roads having the same, and that it was against the law to give other rates.

The following was the testimony as to the fire clause:

"Q. What I mean to say is this: Did you tell the agent of whom you asked for the rate that you did not want any fire clause in any bill of lading which he might issue to you? A. No, sir.

"Q. Did you tell him that you wanted to ship your cotton without any fire clause in the bill of lading? A. No, sir; because I did not know it was in the bill of lading.

"Q. Therefore you made no application to him then for a rate based on a bill of lading not containing the fire clause? A. I made no application that way; I made no inquiries; I just asked for the rate.

\*      \*      \*      \*      \*      \*      \*      \*

"Q. Allowing that his reply to you was only one rate, was anything said by him as to the different kinds of contracts you could get? A. No, sir; he never said anything to me at all.

"Q. Were you or not informed that you could get a contract under which the company would be liable as insurer, practically, and another kind of contract, under which they would not be liable for loss in case of fire? A. No, sir.

"Q. Did you have any information, or did you know that if you wanted to make a choice between these two that you could do it? A. No, sir."

The cotton was in the possession of the Union Compress Company when destroyed to which company it had been delivered by defendant to be compressed, and that company had obtained insurance on it for the defendant, it being the custom of that company to effect insurance for the benefit and in the name of each particular railroad compressing cotton at their press. The testimony of the destruction of the cotton is that the Union Compress Company's building and platforms in Texarkana, Texas, were destroyed by fire September 19, 1900, in which the cotton was destroyed with other cotton.

Plaintiff requested instructions of the court which embodied the following propositions:

1. A carrier cannot limit his common law liability without consent of the shipper for consideration given.

2. The mere contract of shipment is not such a consideration.

3. The condition usually, though not necessarily, is a reduced rate, but in such case both rates must be offered shipper and be reasonable, and the shipper given a genuine freedom of choice in making his selection, and if the evidence satisfied the jury, "there was no fair alternative or choice offered to plaintiff by defendant as between two rates, under one of which defendant would be liable for the loss of said cotton by fire, and under the other of which he would not be so liable," the fire clause was not binding upon plaintiff, and the jury might "deal with such bill of lading as though it did not contain such clause or stipulation."

4. The burden of proving the reasonableness of the fire clause, and that plaintiff had a fair opportunity to refuse or accept it, rested upon the defendant.

*Mr. W. S. Parkerson,* with whom *Mr. Branch K. Miller* was on the brief, for plaintiff in error.[1]

*Mr. Charles P. Cocke,* with whom *Mr. William Wirt Howe, Mr. John F. Dillon* and *Mr. Walter B. Spencer* were on the brief, for defendant in error.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

It is well settled that the carrier may limit his common law liability. *York Co. v. Central Railroad,* 3 Wall. 107. But it is urged that the contract must be upon a consideration other than the mere transportation of the property, and an "option

---

[1] For abstract of argument, which was substantially the same as in *Charnock* v. *Texas & Pacific Railway Co.,* see *post,* 433.

and opportunity must be given to the shipper to select under which, the common law or limited liability, he will ship his goods." ·

. If this means that a carrier must take no advantage of the shipper or practice no deceit upon him, we agree. If it means that the alternative must be actually presented to the shipper by the carrier, we cannot agree. From the standpoint of the law the relation between carrier and shipper is simple. Primarily the carrier's responsibility is that expressed in the common law, and the shipper may insist upon the responsibility. But he may consent to a limitation of it, and this is the "option and opportunity" which is offered to him. What other can be necessary? There can be no limitation of liability without the assent of the shipper, *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. 344, and there can be no stipulation for any exemption by a carrier which is not just and reasonable in the eye of the law. *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174.

Inside of that limitation, the carrier may modify his responsibility by special contract with a shipper. A bill of lading limiting liability constitutes such a contract, and knowledge of the contents by the shipper will be presumed.

(2) It is again urged that there was no independent consideration for the exemption expressed in the bill of lading. This point was made in *York Co.* v. *Central Railroad, supra.* In response it was said: "The second position is answered by the fact, that there is no evidence that a consideration was not given for the stipulation. The company, probably, had rates of charges proportioned to the risks they assumed from the nature of the goods carried, and the exception of losses by fire must necessarily have affected the compensation demanded. Be this as it may, the consideration expressed was sufficient to support the entire contract made."

In other words, the consideration expressed in the bill of lading was sufficient to support its stipulations. This effect is not averted by showing that the defendant had only one

rate. It was the rate also of all other roads, and presumably it was adopted and offered to shippers in view of the limitation of the common law liability of the roads.

(3) The carrier cannot contract against the effect of his negligence, and hence it is contended that in the case at bar the burden of proof is upon the defendant to show that the fire was not caused by its negligence or that of its servants. The contention is answered by *Clark* v. *Barnwell*, 12 How. 272. In that case the bill of lading bound the carrier to deliver the goods in like good order in which they were received, dangers and accidents of the seas and navigation excepted. It was held that after the damage to the goods had been established the burden lay upon the carrier to show that it was caused by one of the perils from which the bill of lading exempted the carrier. But it was also held that even if the damage so occurred, yet if it might have been avoided by skill and diligence at the time the carrier was liable. "But," it was observed, "in this stage and posture of the case the burden is upon the plaintiff to establish the negligence as the burden is upon him." The doctrine was affirmed in *Transportation Co.* v. *Downer*, 11 Wall. 129. See also section 218, 2 Greenleaf on Evidence.

*Judgment affirmed.*