STEVENS & RUSSELL v. ST. LOUIS SOUTHWESTERN RY. CO. †
(No. 1437.)

(Court of Civil Appeals of Texas. Texarkana. May 11, 1915. On Motion for Rehearing, June 17, 1915.)

1. CARRIERS ☞180—INTERSTATE SHIPMENTS—STIPULATIONS IN BILL OF LADING—VALIDITY.

A stipulation in a contract for an interstate shipment of freight that claims for loss, damage, or delay must be made in writing within four months after delivery, or in case of failure to make delivery within four months after a reasonable time for delivery has elapsed, is valid notwithstanding Carmack amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913. § 8592]), making the initial carrier liable for any loss caused by it, or any connecting carrier, and providing that no contract shall exempt the initial carrier from the liability imposed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. ☞180.]

2. COURTS ☞97—FEDERAL QUESTIONS—CONTROLLING DECISIONS.

The decisions of the federal Supreme Court construing the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379) are binding on the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329–333; Dec. Dig. ☞97.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

3. CARRIERS ☞180—INTERSTATE SHIPMENTS—STIPULATIONS—VALIDITY.

A stipulation in a contract for an interstate shipment that claims for loss must be made in writing within four months after delivery, or in case of nondelivery within four months after a reasonable time for delivery has elapsed, is not void on the ground that it is without independent consideration.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. ☞180.]

4. CARRIERS ☞180 — INTERSTATE SHIPMENTS—STIPULATIONS—PRESENTATION OF CLAIMS—WAIVER.

An interstate shipper, required by a contract of shipment to give notice of any claim for loss within a specified time, gave notice of claim after the expiration of the time. The auditor of the carrier asked for particulars and stated that the records showed a delivery of the freight with billing instructions. The shipper did not comply with the request and did not reply to the auditor. *Held* not to show a waiver by the carrier of the failure of the shipper to present notice of claim within the time stipulated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. ☞180.]

On Motion for Rehearing.

5. CARRIERS ☞177 — CARRIAGE OF INTERSTATE FREIGHT—STATUTES—CONSTRUCTION.

The effect of the Carmack amendment to the Interstate Commerce Act is not to impose on the initial carrier a liability for its own conduct different from that imposed on it at common law, but to impose on it, in favor of the shipper, a liability to him under the common law incurred by connecting carriers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–789, 791–803; Dec. Dig. ☞177.]

6. CARRIERS ☞185—CARRIAGE OF FREIGHT—EVIDENCE.

A shipper suing the initial carrier of an interstate shipment must introduce in evidence a regulation of the State Railroad Commission if he desires to rely thereon.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 835–850; Dec. Dig. ☞185.]

7. CARRIERS ☞104—CARRIAGE OF FREIGHT—DELAY IN TRANSPORTATION—EVIDENCE.

A shipper of cotton telegraphed to a freight agent of the carrier, before the delivery of the cotton, asking him to trace to destination, and not to stop at any press not running. The agent replied that he would trace the cotton to destination and give best possible service and arrange prompt compression at a designated point. *Held*, that the shipper contemplated a delay in transportation because of the necessity to compress the cotton, and the shipper, charging negligent delay in transportation, must show that the delay was not due to delay for purpose of compressing the cotton.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 439–447, 459–461; Dec. Dig. ☞104.]

8. CARRIERS ☞104 — TRANSPORTATION OF FREIGHT—DELAY—EVIDENCE.

Where a carrier was required to notify the consignee of the arrival of the freight and the carrier did not notify the consignee, who failed to apply for and receive the freight, the question of the arrival of the freight at destination in determining the issue of negligent delay was immaterial.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 439–447, 459–461; Dec. Dig. ☞104.]

9. CARRIERS ☞105 — TRANSPORTATION OF FREIGHT—DELAY—DAMAGES.

Where a carrier negligently delayed the transportation of cotton, but during the delay the market price of cotton at destination increased, the delay did not result in any injury to the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 451–458; Dec. Dig. ☞105.]

10. CARRIERS ☞105—CARRIAGE OF FREIGHT—NEGLIGENT DELAY—MEASURE OF DAMAGES.

Where a shipper of cotton for sale was obliged because of the carrier's delay in transportation to buy other cotton to deliver to the buyers, but the cotton when delivered was worth as much as or more than the cotton he purchased, he suffered no damages because of the delay.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 451–458; Dec. Dig. ☞105.]

Appeal from District Court, Bowie County; W. T. Armistead, Judge.

Action by Stevens & Russell against the St. Louis Southwestern Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Crane & Crane and C. M. Smithdeal, all of Dallas, for appellants. Glass, Estes, King & Burford, of Texarkana, for appellee.

WILLSON, C. J. July 2, 1910, appellants delivered to appellee at Stephens, Ark., 475 bales of cotton to be transported over appellee's and connecting lines of railway to New York City. Appellants claimed, and offered evidence tending to prove, that the cotton was in good condition when it was delivered to appellee, and that it was in bad condition from exposure to the weather when it reached its destination. They further claimed, and offered evidence to prove, that their purpose in shipping the cotton to New York was to enable them to comply with contracts they had made to deliver there in July cotton they had sold, and that appellee had notice of their purpose before and at the time it accepted same for transportation as stated. Appellants further claimed that the cotton was not promptly carried to its destination, but that, on the contrary, the transportation thereof was negligently delayed, so that same did not reach New York in time to be used by them in complying with their said contracts. They claimed that because of such delay they had to buy on the market in New York the cotton needed to fill said contracts, at a loss to them, in the difference between prices they had to pay and the prices at which they had agreed to sell, of $2,000. They further claimed that they had to expend $712.50 in having the cotton so "reconditioned" as to be marketable after it reached its destination, and that they lost $940.58 due to depreciation in the market value of a portion of the cotton because of its damaged condition. They sought a recovery against appellee of the aggregate of the sums mentioned, to wit, $3,653.08. The court instructed the jury to find in appellee's favor, and on

their verdict in accordance with the instruction rendered judgment that appellants take nothing by their suit against appellee.

[1] As stated above, there was testimony tending to show that the cotton was injured by exposure to the weather after it was delivered to appellee and before it reached New York, and that as a consequence thereof a portion of it was worth less than it otherwise would have been worth, and that appellants incurred expense in reconditioning it they otherwise would not have been subjected to. Clearly, therefore, unless it appeared that appellee, by the terms of the contract covering the shipment, had been relieved of the liability it may have incurred to compensate appellants for damages such testimony tended to show they had suffered, the trial court erred in instructing the jury as stated. That court evidently was of opinion appellee had been so relieved by the failure of appellants to comply with a stipulation in the policy as follows:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or in case of failure to make delivery then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

It was shown that all the cotton was delivered in New York before August 20, 1910, and it was shown that appellants did not make any claim on account of the damages they sued for until December 31, 1910. It thus appeared that the stipulation set out above was not complied with. So the question is: Did the failure of appellants to comply with it operate to bar a right in them, if they ever had one, to recover the damages they sued for?

Appellants insist the stipulation was invalid under that part, known as the Carmack amendment, of section 20 of the Interstate Commerce Act, as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." U. S. Comp. St. 1913, § 8592.

The contrary seems to have been in effect determined in Railway Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690. In that case it was contended that a stipulation in a contract that no suit should be brought after the lapse of 90 days from the happening of any loss or damage, "any statute or limitation to the contrary notwithstanding," was void. The trial court and Court of Civil Appeals sustained the contention. The Supreme Court overruled it, and, after saying that "the liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack amendment of the Hepburn Act of June 29, 1906," and that "the validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation," declared that:

"The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence."

[2] This court is bound by the construction given by that court to the statute referred to. We see no reason why if the stipulation in question in that case should be held to be valid, notwithstanding the statute, the one in question here should not be. It was expressly held by that court, in Southern Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, that a stipulation similar to the one here was valid under the common law. In that case the court said:

"It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is only required to make his claim within 90 days, in season to enable the carrier to ascertain what the facts are, and, having made his claim, he may delay his suit. It may also be remarked that the contract is not a stipulation for exemption from responsibility for the defendants' negligence, or for that of their servants. It is freely conceded that, had it been such, it would have been against the policy of the law, and inoperative. * * * A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that, in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity, which the strictest rules of the common law ever required."

[3] The contention made that it appeared that the stipulation was void because it was without consideration cannot be sustained. Cau v. T. & P. Ry. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; 5 A. & E. Enc. Law, pp. 300, 320, 321.

[4] It is believed the evidence did not make an issue as to whether appellee had waived the failure of appellants to comply with the stipulation or not. The only testimony we have been able to find in the record which could with any reason be said to have been relevant to such an issue was the letter of appellee's auditor to appellants, dated January 21, 1911, as follows:

"Please refer to your claim of December 31, 1910, for $3,868.66, alleged damages in con-

nection with a shipment of 475 bales of cotton from Stephens, Ark., to New York, N. Y., and let me have particulars as to in what manner this company violated its contract. I have before me a certified copy of the contract, which consigns this freight to the order of Stevens & Russell, New York, N. Y., notify Herklotz, Corn & Co., % Warehouse Independent Stores New York City, N. Y. Our records show that the cotton in question was delivered to our connections with these billing instructions."

It was not shown that appellants complied with the auditor's request, did anything toward complying with it, or replied at all to his letter to them.

It has been held that a stipulation like the one in question here has no application to "a claim for damages occasioned by a fall in price on account of the carrier's delay in delivering, as the damages contemplated by the contract are those resulting to the goods through injury or loss in transportation." Notwithstanding this rule, we are of opinion the trial court did not err when he instructed the jury as stated, because the testimony, as we understand it, did not authorize a finding that the shipment was negligently delayed. As appellants contemplated it would be at the time they entered into the contract, the cotton was carried from Stephens to Pine Bluff, where it was delivered to a compress company to be compressed. The time reasonably necessary to consume to compress it was not shown. Nor was it shown when the cotton was redelivered to appellee by the compress company. Nor was it shown what would have been a reasonable time within which to transport the cotton from Stephens to New York, either allowing or not allowing for delay necessary to have it compressed en route as contemplated by appellants. It was shown that all except 38 bales of the cotton was receipted for and unloaded at New York between July 20th and July 30th, and that the 38 bales was receipted for and unloaded there August 19th; but the time when the cotton, or any of it, reached New York, was not shown.

The judgment is affirmed.

### On Motion for Rehearing.

[5] Renewing their contention that the provision in the contract covering the shipment requiring them within four months after the delivery of the cotton to present to the carrier in writing their claim for "loss, damage or delay" was void by force of the Carmack amendment, appellants say:

"It was very plainly held, we think, in the Harriman Case, the liability imposed upon the carrier by the Carmack amendment to the Hepburn act is the liability imposed by the common law upon a common carrier. The Carmack amendment provides that this liability shall not be limited by contract. If to give effect to the stipulation in the bill of lading before us would be to permit the carrier to limit its common-law liability for negligence, the stipulation ought not to be given effect, because to give it effect would be to repeal the Carmack amendment."

The argument indicates, we think, that appellants misapprehend the purpose and effect of the Carmack amendment and the effect of decisions of the federal courts construing it. The liability imposed by the amendment upon the initial carrier was liability "for any loss, damage or injury" to property received by it for carriage caused by its connecting carriers. In other words, the purpose and effect of the amendment was, not to impose upon the initial carrier a liability for its own conduct different from or greater than that imposed upon it by the common law, but to impose upon it in favor of the shipper the liability to him under the common law incurred by its connecting carriers. Therefore what was said by the federal Supreme Court in Southern Express Co. v. Caldwell, cited in the opinion, is as applicable to this case, notwithstanding the Carmack amendment, as it would be had that amendment never been enacted.

Appellants vigorously insist that we erred in holding (because the time necessarily consumed in having the cotton compressed at Pine Bluff, and the time when it reached New York, was not shown) that the testimony did not authorize a finding that the shipment was negligently delayed. In support of the contention it is argued:

[6] 1. That "the law in Texas is that a railroad cannot leave cotton at a compress longer than five days."

Appellants do not cite us to, and we have not been able to find, any such a law. They probably had in mind a regulation of the Railroad Commission of Texas. State v. Railway Co., 31 Tex. Civ. App. 219, 71 S. W. 994. If they did, and thought it applicable to an interstate shipment originating in the state of Arkansas, as the one in question was, as a basis for the contention made here they should have offered the regulation as evidence.

[7] 2. That the compress company was not their agent, but appellee's, and therefore that it did not devolve on them to show the time reasonably necessary to be consumed in compressing the cotton.

What was said in the opinion with reference to this phase of the case was based upon a telegram sent by appellants to appellee's freight agent at Little Rock, before the cotton was delivered to it at Stephens, as follows:

"Shipping 475 bales cotton from Stephens, Ark., to New York to deliver on July. Will you wire trace to destination? Don't stop at any press not running. Must reach New York fifteenth."

And a reply as follows:

"Will trace Stephens to New York cotton and give best possible service and arrange prompt compression at Pine Bluff, which press will understand necessity for quick service."

We thought the telegram indicated an understanding between the parties that the cotton was to be compressed at Pine Bluff, and therefore that appellants should be held to have contemplated and authorized the delay in the transportation thereof necessary to

compress it. We thought, and think, it devolved on appellants, in establishing their charge of negligence on the part of appellee, to show that the delay in the transportation of the cotton to its destination was not due to delay they had authorized for the purpose of compressing the cotton.

[8] 3. That it was appellee's duty not only to transport the cotton to its destination, but to deliver it to the consignees there within a reasonable time; and, the time when the cotton was delivered to the consignees being shown, that it therefore was of no importance that the testimony did not show when it was that the cotton reached its destination.

[9] In several states it is held that the carrier has discharged its duty as such when it has transported the goods to the place they were destined to, that it is the duty of the consignee to be there to receive them, and that the liability of the carrier after so transporting them, even without notice to the consignee of the arrival of the goods, is that of a warehouseman only. 2 Hutch. on Carriers, §§ 702 and 711. In New York, however, the rule is otherwise. 2 Hutch. on Carriers, § 708. There the carrier is charged with the duty of notifying the consignee of the arrival of the goods. We are of opinion therefore that appellants' contention, that in the absence of proof by appellee that the consignees, having been notified by it of the arrival of the cotton at its destination, thereafterward neglected to apply for and receive same, it was of no importance that the testimony did not show the time when the cotton reached New York, should be sustained. But if sustaining it required us to hold that the testimony was sufficient to show a negligent delay in the transportation of the cotton, we nevertheless would overrule the motion, because it does not appear from the record before us that the delay resulted in any injury to appellants. On the contrary, the testimony indicates that the cotton was worth more on the market in New York when it reached that place than it would have been worth had it reached there at the time appellants contend it should have been delivered to their consignees there.

[10] Appellant Stevens testified:

"In July and August, 1910, there was a heavy advance in the cotton market. In the latter part of June it was selling at around $15^{25}/_{100}$ cents per pound, and the latter part of July it was selling at about 16 cents per pound."

The theory upon which appellants sought a recovery because of the delay complained of, was that they had sold a part (what part not shown) of the cotton at approximately 15¼ cents per pound, to be delivered in July, and to comply with their contracts had been compelled because of the delay to buy other cotton to deliver to the purchasers in lieu of it at approximately $15^{96}/_{100}$ cents per pound. It is obvious, we think, that they were not entitled to recover on such a theory without showing that the cotton in question was worth less on the market when it reached New York than the price they had to pay for cotton to use in its stead in complying with their contracts. If the cotton they had shipped to New York was worth on the market when it was delivered to their consignees there as much or more than the cotton they purchased to enable them to comply with their contracts, they suffered no loss because of the delay complained of.

The motion is overruled.