WELLS FARGO & CO. EXPRESS v. BOL-
LIN. (No. 9083.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 12, 1919. On Appellant's Motion for
Rehearing, May 17, 1919.)

CARRIERS ⚖══158(2)—EXPRESS COMPANY—LIM-
ITATION OF LIABILITY.

In view of Interstate Commerce Commission Rule 13, §§ (a), (b), and (c), unless a shipper declares a value greater than 50 cents per hundredweight, and pays the excess rate for the higher valuation, the liability of the express company is limited to such lower rate, and that, even though the contract is oral and nothing is said about rates or value, all express charges to be paid at destination.

Appeal from Johnson County Court; B. Jay Jackson, Judge.

Suit by W. R. Bollin against the Wells Fargo & Company Express. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

J. O. Lockett, of Cleburne, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Walker & Baker, of Cleburne, and W. H. Skelton, of Alvarado, for appellee.

BUCK, J. Plaintiff, W. R. Bollin, sued Wells Fargo & Co. Express for the loss of three trunks and their contents, shipped from Cordell, Okl., and destined to Alvarado, Tex. In the petition the lost articles, consisting mostly of family wearing apparel and photographs, etc., were itemized, and the value of each alleged, aggregating nearly $500. It was further alleged that plaintiff had been damaged in the further sum of $100, by reason of the family having been deprived of the use of the wearing apparel, and the increased cost of such articles on the market due to the rise in the purchase price thereof, but this element of damage was not submitted to the jury.

Defendant answered by way of general demurrer, various special exceptions, general and special denials, and specially pleaded that if plaintiff should be entitled to recover at all, such recovery should be limited to $107.50 or 50 cents per pound on 215 pounds, the weight of the three trunks and contents; that the bill of lading issued to plaintiff evidenced the contract of shipment between the parties, and so limited the liability of the express company in case of loss; that the rate charged plaintiff was authorized by the Interstate Commerce Commission, and that in receiving and transporting said property the defendant was required to issue and did issue to plaintiff a uniform express receipt or bill of lading for the property to be transported for plaintiff, who knew the same would be issued and called for same, and said receipt was later issued, under and by virtue of which the property referred to by plaintiff in his petition was to be and was transported by defendant; that under said receipt the liability of defendant was limited to the amount above named. Defendant prayed that plaintiff be given judgment for $107.50, and defendant recover judgment for its costs. From a judgment for plaintiff in the sum of $413, the defendant has appealed.

There are various assignments in appellant's brief directed to the action of the trial court in sustaining certain special exceptions of plaintiff to portions of defendant's answer by which it sought to limit plaintiff's recovery to $107.50. Other assignments are directed to the charge of the court, which withdrew from the jury all testimony of the defendant on the question of the limitation of liability by reason of any alleged contract, and also all evidence on the question of tender, made by defendant, but we do not find it necessary to discuss these assignments seriatim, inasmuch as the testimony offered

by defendant in support of its allegations of limited liability seems to have been admitted without objection, and we have concluded that the testimony as a whole fails to show that plaintiff, either expressly or impliedly, contracted with defendant to ship the trunks at the lower rate, or at any other rate which would have entitled defendant to urge the defense of the limitation of the liability by reason of any contract. The evidence shows that the plaintiff had lived in Alvarado, Tex., and at Cordell, Okl., for many years, spending a part of his time at each place; that some two weeks before the shipment of goods in question plaintiff and his family left Alvarado for Cordell; that at the time of the shipment plaintiff desired to return to Alvarado through the country in an automobile, and delivered the trunks for shipment to the express company; that the assistant agent received the trunks, and, when plaintiff offered to pay the charges thereon, the agent told Bollin that he, the agent, was busy at the time, and that it would be all right to pay the charges at destination; that nothing was said by either party as to what the rate was on the goods shipped, or what the amount of charges would be. Upon plaintiff's arrival at Alvarado, he inquired of the local agent for his trunks, and learned that they had not arrived. Some two weeks later he was again at Cordell, and inquired of the shipping clerk about his trunks, and the latter told him that he had shipped them out the day they were delivered to the express company. He also talked to the agent about the trunks, who said that they would make every effort possible to locate them. Several weeks later, after his return to Texas, the plaintiff wrote to a friend in Cordell to go to the express company and get a receipt for the goods shipped, which the friend did. This receipt was made as of the date of the shipment and read as follows:

"Wells Fargo & Company Express. Nonnegotiable receipt. 3—6—1917. Received from W. R. Bollin subject to the classification and tariffs in effect on the date hereof three trunks value herein stated and warranted by shipper to be ―― dollars. Consigned to W. R. Bollin at Alvarado. Charges collect. Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof, accepts and signs this receipt. ――――, Shipper. J. E. Kerr, for the Company.

"Note.—The company's charge is based upon the character of the property of which its value is an element, and its value must be declared in writing by the shipper unless its character is otherwise disclosed. When goods are hidden from view by wrapping, boxing or other means, and the company is not notified of the character thereof, the shipper's declaration of value may be made by notation, 'Not to exceed $50' or 'Not exceeding fifty dollars or fifty cents per pound actual weight.' "

It will be noted that said receipt does not contain the signature of the shipper. On the reverse side of this receipt there appears certain provisions, among which are the following:

"1. The provisions of the receipt shall inure to the benefit of and be binding upon the consignor, the consignee and all carriers handling this shipment, and shall apply to any consignment or return thereof.

"2. The rate charged for carrying said property is dependent upon the actual value of the property, which must be specifically stated in writing by the shipper, and applies only upon property of an actual value not exceeding fifty dollars for any shipment of 100 pounds or less, or not exceedings fifty cents per pound actual weight for any shipment in excess of one hundred pounds or less. If the actual value is greater than fifty dollars for any shipment of one hundred pounds or less, or exceeds fifty cents per pound actual weight for any shipment in excess of one hundred pounds, such actual value must be specifically stated in writing by the shipper, and excess charges for such greater value must be paid therefor in accordance with the lawfully published tariffs of the company."

There was in use by the express company another form of receipt which provided, in part, that:

"The company will not pay over fifty dollars in case of loss, or fifty cents per pound actual weight for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid. * * * Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof, accepts and signs this receipt. ――――, Shipper. ――――, for the Company.

"Note.—The company's charge, except upon ordinary live stock, is dependent upon the value of the property, as declared or released by the shipper. If the shipper desires to release the value to $50 for any shipment of 100 pounds or less, or not exceeding fifty cents per hundred pounds actual weight for any shipment in excess of 100 pounds, the value may be released by inserting 'not exceeding $50' or 'not exceeding fifty cents per pound' in which case the company's liability is limited to the amount not exceeding the value so declared or released."

It is further in evidence that the express company, through its agent at Alvarado, in August following, presented to plaintiff a form of receipt to be signed by him, stating to the plaintiff that by his signing said receipt the express company would be better able to trace and recover the lost goods, and that the plaintiff would get a settlement sooner. Plaintiff declined to sign said instrument until he could submit it to his attorney, and, after submitting it to his attorney, he declined to sign it at all. While defendant pleaded that plaintiff knew the form of receipt that would be issued, and that by and in said form the liability of defendant was limited to 50 cents per pound, yet no evidence is cited in the brief, and we have found none in the statement of facts showing, or tending to show, that plaintiff intended and contem-

plated shipping the goods at the lower rate, and thereby agreed to the limitation of liability. The rate from Cordell to Alvarado for trunks is $1.80 per 100 pounds. Under this rate defendant would have been liable for the reasonable value of the goods lost. Geo. W. Higgins, the clerk to whom was delivered the trunks in question, testified that—

The rate "from Cordell, Okl., to Alvarado, Tex., where no value is declared, is $1.80 per hundred. Where value higher than 50 cents is declared the rate is 10 cents per hundred or fraction thereof in excess of 50 cents per pound."

In Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, perhaps the leading case on the question here involved, it was held that a stipulation in a carrier's receipt, limiting its liability to an agreed or declared value, made to adjust the rate, is not forbidden by the provision of the Carmack Amendment, Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595, to the Act of Congress of February 4, 1887, c. 104, § 20, 24 Stat. 386, that—

"No contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

It was further held in the same case that a carrier could, at common law, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates, proportioned to the amount of the risk. Subsequent to this decision there were two further amendments made to this act (Act Cong. March 4, 1915, c. 176, § 1, 38 Stat. 1196; Act Cong. Aug. 9, 1916, c. 301, 39 Stat. 441 [U. S. Comp. St. §§ 8604a, 8604aa]), by the last of which common carriers, under the authority of the Interstate Commerce Commission, might adopt schedules of rates varying with the value of the goods shipped as declared and agreed upon, and the commission was empowered to make rates dependent on and varying with declared or agreed values in cases where such rates would be just and reasonable under the circumstances and conditions surrounding the transportation.

While the two forms of receipt hereinabove noted appear to be contradictory, in that the first implies that the shipper must declare a value in excess of 50 cents per pound in order to be entitled to full liability on the part of the carrier, and while the second form seems to provide that unless the shipper releases the value to $50 per hundredweight or less, in order to secure a reduced rate, there will be no contractual limitation of the liability of the carrier, the authorities seem to support the view that it is only by a contract or agreement, expressed or implied, between the carrier and the shipper for a decreased liability on the part of the carrier on consideration of a lower rate charged, that such decreased liability may be sustained. In Cau v. T. & P. Ry. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053, Justice McKenna, speaking for the Supreme Court, says:

"Primarily the carrier's responsibility is that expressed in the common law, and the shipper may insist upon the responsibility. But he may consent to a limitation of it, and this is the 'option and opportunity' which is offered to him. What other can be necessary? There can be no limitation of liability without the assent of 'the shipper (New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465), and there can be no stipulation for any exemption by a carrier which is not just and reasonable in the eye of the law. New York C. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627."

To the same effect are the cases of Texas Midland Ry. Co. v. Edwards, 56 Tex. Civ. App. 643, 121 S. W. 570; S. A. & A. P. Ry. Co. v. Bracht, 172 S. W. 1116, writ refused. In the case last cited it was held that, where the facts showed that an oral contract was made between the carrier and the shipper at the time of the delivery of the goods, and that a written contract, containing stipulations as to the liability of the carrier, was signed by the shipper after the shipment had proceeded several miles on its journey, the oral contract would prevail, unless the shipper, with knowledge of the contents of the written contract, had agreed to the same, citing Railway Co. v. Meadors, 104 Tex. 469, 140 S. W. 427; Railway Co. v. Sparks, 162 S. W. 943. In the Bracht Case it is said:

"It is true that appellee knew that he would be required to sign a bill of lading or contract after the train arrived at a certain place, but that would not, as a matter of law, destroy the oral contract."

The evidence in the instant case shows that no receipt was issued at the time of the shipment, and that the receipt, under which appellant claims the shipment was made, was not issued until several weeks later. The evidence further shows that Bollin did not sign this receipt, nor did any one for him, and that, when subsequently the agent of the express company presented him with a receipt and requested him to sign it, he refused to do so. Under the authorities above cited, we are of the opinion that the only contract of shipment between plaintiff and defendant was an oral one, made at the time of the delivery of the goods at Cordell. This contract consisted only of a tender of the goods by the shipper and an acceptance by the express company, with no stipulation or understanding as to the limitation of the liability of the carrier. Under these facts, we are of the opinion that the common-law liability would obtain. Ryan v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589. In McMillan v. Rail-

way Co., 16 Mich. 79, 93 Am. Dec. 208, it was held that the fact that the consignor had previously accepted contracts restricting the carrier's liability in a certain manner would not amount to a contract limiting liability in a particular case, in the absence of express assent. In Reed v. Fargo, 54 Hun, 635, 7 N. Y. Supp. 185, it was held that the fact that the shipper knew that the defendant company always inserted stipulations in its receipts and bills of lading limiting its liability would not release the company from its common-law liability; it appearing that no receipt or bill of lading was given to the shipper. While the rule may be, as sustained by many authorities, and followed in this state in the case of Ryan v. Railway Co., supra, that the acceptance at the time of the shipment by the shipper of the receipt, containing stipulations limiting the liability of the carrier, will sustain the presumption of assent on the part of the shipper to said limitation, yet no such implied assent will be presumed by reason of a delivery of a receipt long subsequent to the shipment, although such delivery was made in response to the request of the shipper. See authorities collated in 10 Corpus Juris, p. 138 et seq.

As we have concluded that the evidence fails to sustain the theory that the appellee agreed or assented to the limitation of appellant's common-law liability, and as it further appears that the evidence in support of defendant's allegations presenting this defense was admitted without objection, although the plaintiff's special exceptions directed to these allegations were sustained, it follows that the judgment of the trial court must be sustained, irrespective of whether or not error was committed in sustaining such special exceptions. Hence, we overrule assignments 1 to 5, inclusive, alleging error by reason of the action of the court in sustaining said special exceptions, and overrule assignments 6 to 9, inclusive, directed to the failure of the court to instruct the jury to limit the recovery for plaintiff to $107.50, the amount to which plaintiff would have been entitled had defendant's contention as to the limitation as to liability been sustained. Other assignments in the brief present questions which are controlled by what we have heretofore said.

All assignments are overruled, and the judgment is affirmed.

### On Appellant's Motion for Rehearing.

Upon a further consideration of the law questions in this case and a re-examination of the authorities, we have concluded that we erred in the disposition of this appeal on original hearing. It would seem, under the authority of A., T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901, and Boston, etc., Ry. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593, that unless the shipper declares a value greater than $50 per hundred weight, and pays the excess rate for the higher valuation, the liability of the carrier is limited to such lower rate. Rule 13, sections (a), (b), and (c), of the Interstate Commerce Commission, introduced in evidence, reads as follows:

"(a) The rates governed by this classification are based upon a value of not exceeding fifty dollars on each shipment of one hundred pounds or less, and not exceeding fifty cents per pound actual weight on each shipment weighing more than one hundred pounds, and the liability of the express company is limited to the value above stated, unless a greater value is declared at the time of shipment, and the declared value in excess of the value above specified is paid for or agreed to be paid for under the schedule of charges for excess value.

"(b) When the value declared by the shipper exceeds fifty dollars on a shipment weighing 100 pounds or less, or exceeds fifty cents per pound on a shipment weighing more than one hundred pounds the charge for such excess value will be at the rate of ten cents on each $100 or fraction of $100. * * *

"(c) When the weights of separate packages are aggregated under rule 2, declared values of the separate packages must also be aggregated, and if the value so ascertained exceeds fifty dollars for 100 pounds weight or less, or fifty cents per pound, when the weight exceeds one hundred pounds, additional charge for the excess value must be assessed as provided in paragraphs a and b.

"Trunks: First Class. Cordell, Okla., to Alvarado, Texas, $1.80.

"Schedule of first-class express rate in cents. $1.80 per hundred pounds. Charges on shipments of over 100 pounds must be computed as per instructions on page 3. Item 2, page 3: Rates for shipments over 100 pounds first-class rate. When the scale number is known first class charges on shipments of only 100 pounds must be ascertained by multiplying the rate for a hundred pound package by the number of pounds in the shipment and dividing the product by one hundred.

"Example: Under rate scale 45 what is the charge for 583 pounds of first-class matter? The rate for 100 pounds being $2.75, $2.75 \times 583$ equals to 1603.25. 1603.25 divided by 100 equals 16.0325. Under the rule of classification that all fractions of a cent shall be equalized as one cent, the charge would be $16.04."

It is uncontroverted that appellee declared no higher valuation, in fact declared no valuation at all. Under such circumstances, under the authorities above cited, he would be chargeable for only basic rate and would be limited in his recovery to the valuation of $50 per hundredweight. Hence the judgment below is reformed so as to allow appellee a recovery of only $107.50. The motion for rehearing is granted, and the judgment as reformed will be affirmed, with costs of appeal adjudged against appellee.