UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. FLORIDA GRAIN & ELEVATOR CO.

Circuit Court of Appeals, Fifth Circuit.
July 7, 1927.

No. 4690.

1. Shipping ⟊141(1)—Under provisions of bills of lading, vessel was not liable for delay incidental to call at particular port, except as due to its negligence.

Where bills of lading authorized vessel to call at particular port, and provided it should not be liable for any loss caused by prolongation of voyage, vessel was not liable for delay, except as due to its negligence.

2. Shipping ⟊132(3¾)—Shipper, suing for delay in delivery of corn, had burden of showing negligence (Suits in Admiralty Act 1920 [Comp. §§ 1251¼–1251¼l]).

In action under Suits in Admiralty Act 1920 (Comp. St. §§ 1251¼–1251¼l) against United States Shipping Board Emergency Fleet Corporation to recover damages for delay in delivery of shipment of corn, plaintiff had burden of showing that delay was due to defendant's negligence.

3. Shipping ⟊126—Delay of vessel at port of call, due to owner's failure to furnish sufficient funds for unloading at prevailing prices, held due to owner's negligence.

Delay of vessel at port of call, due to stevedores' strike and failure of owner to furnish

funds necessary to pay for unloading at higher prices then prevailing, *held* due to owner's negligence, as affects liability for delay in delivery of shipment.

4. Shipping ⊜131—Measure of damages recoverable for negligent delay in shipment held difference between price received on delivery and market value when delivery should have been made (Suits in Admiralty Act 1920 [Comp. St. §§ 1251¼–1251¼*l*]).

Measure of damages recoverable from United States Shipping Board Emergency Fleet Corporation, under Suits in Admiralty Act 1920 (Comp. St. §§ 1251¼–1251¼*l*) for negligent delay in delivering shipment of corn, *held* difference between price received for corn when delivered and market value at time when delivery should have been made.

5. Shipping ⊜131—Generally measure of damages for carrier's delay in delivery of goods is diminution in market value.

As a general rule, the measure of damages for a carrier's negligent delay in the delivery of goods is the diminution in market value between the time they ought to have been delivered and the time they were in fact delivered.

6. Shipping ⊜131—Carrier without notice of special use for which goods are intended is not liable for special damages for delay.

Special damages for carrier's negligent delay in delivery of shipment are not recoverable, unless carrier has knowledge or notice of special use to which goods are to be put.

7. Shipping ⊜131—Allowance of 8 per cent. interest on recovery against Shipping Board Emergency Fleet Corporation for negligent delay in shipment held improper (Suits in Admiralty Act 1920, § 3 [Comp. St. § 1251¼b]).

In action against United States Shipping Board Emergency Fleet Corporation for damages for negligent delay in delivering shipment, allowance of interest at 8 per cent., the legal rate in Florida, where suit was brought, on amount of recovery, *held* improper, in view of Suits in Admiralty Act 1920, § 3 (Comp. St. § 1251¼b), limiting recovery to 4 per cent.

8. Shipping ⊜131—Allowance of interest on recovery against Shipping Board Emergency Fleet Corporation for delay in delivering shipment, from date liability became fixed to satisfaction of decree, held not improper (Suits in Admiralty Act 1920, § 3 [Comp. St. § 1251¼b]).

In action against Shipping Board Emergency Fleet Corporation for damages for negligent delay in delivery of shipment, allowance of interest on recovery from date liability became fixed until decree was satisfied *held* not improper, in view of Suits in Admiralty Act 1920, § 3 (Comp. St. § 1251¼b), providing, "Interest shall run as ordered by the court."

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Libel by the Florida Grain & Elevator Company against the United States Shipping Board Emergency Fleet Corporation.

Decree (300 F. 169; 3 F.[2d] 314) for plaintiff, and defendant appeals. Reversed, and cause remanded, with directions.

Arthur M. Boal, Admiralty Counsel U. S. S. B., of Washington, D. C., J. Frank Staley, Sp. Asst. Atty. Gen., Francis L. Poor, Asst. U. S. Atty., of Jacksonville, Fla., and Edouard F. Henriques, Sp. Asst. in Admiralty to Atty. Gen. (William M. Gober, U. S. Atty., of Tampa, Fla., on the brief), for appellant.

Charles Cook Howell, of Jacksonville, Fla. (Oscar O. McCollum, of Jacksonville, Fla., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The Florida Grain & Elevator Company brought a libel in personam against the United States Shipping Board Emergency Fleet Corporation, under the Suits in Admiralty Act of 1920 (41 Stat. 525; Comp. St. §§ 1251¼–1251¼*l*), to recover damages sustained by delay in the delivery and consequent deterioration in quality of 10,000 bushels of corn, shipped from Jacksonville to Havana on the government steamer Hoosac.

The Hoosac, with the shipment of corn on board, sailed from Jacksonville on September 10, 1920. She arrived in Matanzas, Cuba, on September 24, where she remained until November 17, when she sailed for Havana, arriving there on the same day. The delay at Matanzas was caused by the failure of the Fleet Corporation to supply funds sufficient to pay for unloading cargo. The stevedores at that port were on a strike, but that was known before the Hoosac began the voyage, and ample facilities and laborers were available for unloading cargo, though at higher than usual prices. There was some testimony to the effect that in the usual course of commercial trade the trip from Jacksonville to Havana, including the stop at Matanzas, should have been made within 10 days; but there was no affirmative evidence to show any negligence in navigating the Hoosac.

About one-third of the entire cargo was shipped to Matanzas. The shipper consigned the corn to itself, with orders to notify purchasers at Havana, and furnished export declarations which purported to state the market value at time and place of shipment. The bills of lading provided that, in the event of short delivery, the price should be the market price at port of destination on the last day of landing cargo, less all charges

saved. The bills of lading also provided that the ship should have liberty to call at any port in or out of the customary route to land or receive goods or passengers, and should not be liable for any loss or damage caused by a prolongation of the voyage. The corn deteriorated in value because of the long delay in transit, and the purchasers at Havana refused to accept it. On December 23 it was sold for $11,337.36, and that amount was received by the shipper, but without prejudice to its rights. At that time the market value was $1.39 per bushel.

The libel claimed the right to recover the market value as of September 20, less the proceeds of sale. The testimony of a commission merchant and merchandise broker in Havana was taken by deposition. The shipper's interrogatories called for market value of corn of the grade that was shipped on each of the days from September 15 to September 20, and cross-interrogatories on behalf of the Hoosac called for such market prices on November 17, the date of arrival at Havana, and on each day thereafter through December. The witness gave testimony tending to show that the market value was $2.07 per bushel on September 18, $2 on September 20, and $1.39 on December 28, but failed to give values on any other of the dates inquired about, stating in that connection that he had no records available for reference on which to base his answers.

The District Judge held the carrier liable for the delay after arrival at Matanzas, and that this delay caused the deterioration complained of in the quality of the corn, but that the resulting damage ought to be measured by the difference between the amount realized at the sale in December and the contract price, rather than by the difference between such sale price and the market price. Further testimony was taken to determine more definitely the contract price, and the decree based thereon represents the difference between the amount realized at such sale and the contract price, with interest at 8 per cent., the legal rate in Florida, up to the time of the entry of the final decree.

The Fleet Corporation appeals, and contends that the decree ought to have been based on the market price in Havana on the date when delivery should reasonably have been made, that such delivery could not reasonably have been required until later than September 20, the last date on which market value was shown by the evidence, until December 28, and that, assuming a market value of $1.39 per bushel on December 23,

the most that can be recovered is the difference between $11,337.36, received by the shipper, and $13,900 the market value, or $2,562.54.

[1-4] The bills of lading authorized the Hoosac to call at the port of Matanzas, and provided that it should not be liable for any loss or damage caused by a prolongation of the voyage. In view of these provisions, appellant only became liable for so much of the delay as was due to its negligence. Cau v. Texas Pacific Ry. Co., 194 U. S. 427, 24 S. Ct. 663, 48 L. Ed. 1053. The burden was on appellee to show that any delay in arriving at Matanzas was caused by appellant's negligence. The Lennox (D. C.) 90 F. 308. This burden appellee failed to meet. The long delay at Matanzas was undoubtedly attributable to appellant's negligence, and it is therefore liable for all damages sustained after the expiration of a reasonable time for discharging cargo at Matanzas. We are of opinion that it was error to adopt the contract price as the measure of such damages.

[5, 6] The general rule is that the measure of damages for a carrier's negligent delay in the delivery of goods is "the diminution in the market value of the goods between the time they ought to have been delivered and the time they were in fact delivered." 4 R. C. L. 931. Special damages for such delay are not recoverable, unless the carrier had knowledge or notice of the special use to which the goods were to be put. Appellee's export declaration did not give or imply notice that the corn had been sold at any particular price, or at all, but merely gave the market value at the time and place of shipment. Besides the bills of lading fixed the liability of the carrier upon the basis of market value at the port of destination. The damages must therefore be based on the market value at Havana at the time when the goods should have arrived, which would be within such reasonable time after September 24 as would allow for unloading cargo at Matanzas.

Appellee's evidence as to market value relates to dates that were past when liability is shown to have attached. The time reasonably necessary for unloading at Matanzas is not shown, and should be fixed, so that the market value at the correct date can be determined. Appellant seems to concede that the Hoosac should have been unloaded at Havana by the 1st of October. If the market price was higher at the time when the goods should have been delivered than it was in December, appellee is entitled to the benefit

of such higher market price. When the District Court adopted the contract price as the basis for ascertaining damages, appellee was excusable for its failure to submit further proof of market value. In the present state of the record, in view of our conclusions in regard to the proper measure of damages, appellee would have to be content with the market value in December, which it may be was much lower than it was during the last part of September or the first part of October. Under all the circumstances, opportunity will be given to each of the parties to submit still further testimony to the District Court on the question of market value of corn at Havana covering the relevant period between September 24 and December 23, 1920.

[7] Appellant also contends that it was error to allow interest at 8 per cent., the legal rate in Florida, from the date the liability became fixed to the date of the final decree, and insists that interest is fixed by statute at the rate of 4 per cent. per annum before as well as after the date of the final decree. On the other hand, appellee contends that interest at a higher rate, particularly that prevailing in the state where suit is brought, may be allowed, as damages for the detention of money, up to the time of final decree. The decree does not specify the rate of interest which it shall draw. These conflicting contentions are based on section 3 of the Suits in Admiralty Act (Comp. St. § 1251¼ b), the pertinent part of which reads as follows: "A decree against the United States or such [fleet] corporation may include costs of suit, and when the decree is for a money judgment, interest at the rate of four per centum per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based. Interest shall run as ordered by the court."

[8] The only rate of interest mentioned, in the absence of contract, is 4 per cent. It is true that such rate of interest is provided until the decree is satisfied, but whatever argument may be advanced to the effect that interest accruing prior to the date of the decree was not intended to be included is made to lose its force by the concluding sentence: "Interest shall run as ordered by the court." That sentence doubtless was inserted in recognition of and for the purpose of continuing the well-known practice in admiralty of allowing interest or not prior to the entry of the decree, according as the court in its discretion might determine. The first portion

of the language quoted confers upon the courts at least the power to include interest after the date of the decree, and the last sentence confirms a like power to allow interest before the date of the decree.

The only interest provided, in the absence of special contract, is at the statutory rate of 4 per cent., regardless of the interest rate prevailing in the state where suit is brought. The context shows that the word "interest" in the concluding sentence means interest at the rate fixed in the first sentence. A given rate of interest having once been provided, and there being no mention of any other rate, a different rate will not be implied, but the same rate is to be understood, in any subsequent reference to interest.

The decree is reversed, and the cause remanded, with directions to give appellee an opportunity to take further testimony on the question of the measure of damages, and for further proceedings in conformity to this opinion.