UVALDE CO. v. O'BRIEN.    (No. 7197.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1924. Rehearing Denied Nov. 19, 1924.)

1. **Negligence** ⬅83 — **Last clear chance doctrine stated.**

Where contributory negligence is conceded, test of defendant's liability is not whether injured person's peril could have been discovered, but whether actually discovered in time to have prevented injury.

2. **Municipal corporations** ⬅706(5)—**Evidence held to warrant finding employés operating truck discovered pedestrian's peril in time.**

Evidence *held* to sustain finding defendant's employés, in charge of truck dragging chain, discovered peril of woman approaching chain in time to have averted injury.

3. **Appeal and error** ⬅207, 499(1)—**Assignments of error in argument of counsel held without merit.**

Assignments of error complaining of argument of counsel *held* without merit, where no objection was made to argument at time, nor in bill of exceptions subsequently filed.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Damages ☞132(6)—$7,000 for fracture of thigh and hip of 70 year old woman held not excessive.**

Seven thousand dollars damages for fracture of thigh bone and hip joint of 70 year old woman, earning $100 monthly, which permanently crippled her, *held* not excessive.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Mary O'Brien against the Uvalde Company. From judgment for plaintiff, defendant appeals. Affirmed.

Lewright & Lewright and Lawrence Allen, all of San Antonio, for appellant.

Bascom Bell, Edwin Sehorn, and John Sehorn, all of San Antonio, for appellee.

FLY, C. J. This is a suit for damages arising from personal injuries alleged to have been inflicted upon appellee through the negligence of appellant. It was alleged that the personal injuries were received while appellee was crossing Burleson street, in the city of San Antonio, through the negligent operation of an automobile driven by an employé of appellant; the grounds of negligence being that a chain was attached to the front of an automobile, and was being dragged along said street, and appellee stepped upon the same; that the machine was moved backwards, and appellee was not given any warning of the danger, and that her attention was distracted by one of the employés talking to her and failing to warn her of her danger. The cause was submitted to a jury through special issues, and upon the responses thereto judgment was rendered in favor of appellee for $7,000.

The jury found that the employés were guilty of negligence in moving the truck with a chain attached to it; that such negligence was a proximate cause of injury to appellee; that the employés failed to warn appellee of the danger, which was negligence and a proximate cause of her injury; that appellee was in a position of peril when she approached the chain, which was known to the employés in time to have averted the accident by the exercise of ordinary care; that an employé was guilty of negligence, which was a proximate cause of the injury to appellee, in speaking to her and distracting her attention as she approached the chain. The jury also found that appellee was guilty of contributory negligence in failing to look ahead of her, which was a proximate cause of her injury The damages were placed at $7,000.

[1] The only ground upon which a judgment for appellee could be sustained, under the findings of the jury, was that the employés of appellant saw and understood the peril of appellee in approaching a chain attached to a truck of appellant, which was being dragged along the street. If appellee was guilty of contributory negligence, as found by the jury, in walking on the moving chain, and such contributory negligence was the proximate cause of her injuries, she could not recover, unless the employés of appellant, in charge of the truck, actually discovered that she was in a perilous position and failed to use all reasonable means at their command to prevent the injury of appellee. The test is not, would appellant have discovered the perilous condition of appellee, had an outlook been kept, but did appellant actually discover the peril of appellee, and could it have prevented the injury by the use of means at its hands? The law is thus stated in Railway v. Breadow, 90 Tex. 26, 36 S. W. 412:

"If defendant, through the parties in charge of the engine, knew of Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. * * * The principle, however, has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured, in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge, the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same."

[2] The facts in this case show that a man in charge of the truck knew that an old woman was endeavoring to cross a street at a point where a very large chain, attached to the truck, was being dragged along the street. He knew that she would have to step over that chain if she attempted to cross at the place where it was being dragged. He knew that an old woman might not lift her feet high enough to avoid striking the chain. He knew that she was not looking towards the chain, but over her shoulder at him, and that she was in imminent peril of stepping upon or being struck by the chain and thrown to the ground and injured. But he made no effort to protect her. It was shown that he had his foot on the brake, and could have instantly stopped the truck. He made no effort to stop. An employé on the ground saw the position of appellee, and recognized her imminent peril, and called to her, but she did not hear or heed him. He could and should have called to the man at the wheel of the truck, who could have stopped the truck before appellee got to the chain. The finding of the jury that the employés discovered the peril of appellee and could, by means at hand, have prevented the accident was justified by the evidence. The pleadings set up discovered peril, and the court

was justified in submitting the issue. The first, second, third, fourth, and seventh assignments of error are overruled.

[3] The fifth and sixth assignments of error complain of remarks made by an attorney for appellee in the closing argument to the jury. It is stated in the bill of exceptions taken to the remarks of counsel "that at no time during the progress of said speech did counsel for defendant except or object to any portion thereof, nor did the court say anything to the said John Sehorn during the progress of his said speech to the jury." The judgment was rendered on November 13, 1923; the motion for new trial was overruled on January 28, 1924, and the bill of exceptions, if it can be called a bill of exceptions, was filed on February 16, 1924. It does not present any exceptions or objections to the remarks of counsel, but is a mere statement of the remarks as taken down by the court stenographer. There is nothing upon which to predicate the two assignments of error, and they are overruled.

[4] The eighth assignment of error seeks to assail the verdict on the ground of excess. There is no evidence of passion or prejudice on the part of the jury, nor does the size of the verdict itself evidence improper motives on the part of the jury, and this court is not in a position to declare the verdict excessive. It is true that appellee was in her seventieth year when hurt, but that is not sufficient to show the verdict was excessive. She was earning about $100 per month, and she was badly hurt, and suffered greatly from her injuries. The left thigh bone, or femur, which extends from the hip to the knee, was fractured, as well as the rim of the acetabulum, which is the cup-shaped socket of the hip bone which receives the rounded head of the thigh, and with which it articulates. The doctor swore that "her pain and suffering were intense," and he treated her for three months. She was permanently crippled. She was confined to her bed for six months. The assignment is overruled.

The judgment is affirmed.