### INTERNATIONAL-GREAT NORTHERN R. CO. et al. v. SMITH et al. (No. 7256.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 7, 1925. Rehearing Denied March 4, 1925.)

**I. Appeal and error ☞395—Propositions raised by appealing parties furnishing no appeal bond will be stricken.**

Propositions raised by appealing parties furnishing no appeal bond will be stricken.

**2. Railroads ☞312(4)—Enginemen held negligent in failing to keep lookout.**

Engineer and fireman *held* negligent in failing to keep lookout at highway crossing.

**3. Railroads ☞348(4)—Evidence held to justify finding omission of crossing signals was negligence.**

Evidence *held* to justify finding that nonprotection by railroad of much used crossing with audible signals was negligence.

**4. Appeal and error ☞742(I)—Propositions required to be accompanied by statements under them of facts upon which based.**

Propositions of law should be accompanied by statements under them of facts upon which propositions are based.

**5. Railroads ☞258—Company held to have bought property subject to claim for damages.**

Under Rev. St. arts. 6624, 6625, a railroad company which, in buying property of a former railroad company, assumed payment of the ob-

ligations of the receivership, *held* to have bought the property and franchises of the former company subject to claim for damages for death.

**6. Jury ☞136(6)—Defendant, by impleading employés as codefendants, could not double number of challenges permitted by statute.**

Railroad, sued for injuries, by impleading employés as codefendants, could not thereby double number of challenges permitted it by statute.

**7. Trial ☞351(5)—Refusal to give requested special issue not error, where every conceivable issue was presented by court.**

Refusal to give requested special issues was not error, where every conceivable issue raised was presented by court.

**8. Trial ☞306—Arguments of jurors in jury room as to what is proved not misconduct.**

Arguments of jurors in jury room as to what the evidence shows is not misconduct, especially when it does not appear that any one was influenced by them.

**9. New trial ☞140(3)—Trial court held justified in holding juror made no declaration as to matter in evidence gained from personal knowledge.**

Trial court *held* justified in holding juror made no declaration as to matter in evidence gained from personal knowledge.

**10. New trial ☞144—Disregarding of alleged misconduct of jury in considering attorney's fees in arriving at verdict held not abuse of discretion.**

Disregarding of alleged misconduct of jury in considering attorney's fees in arriving at verdict *held* not abuse of discretion, in view of testimony of jurors.

**11. Evidence ☞588—Jury's rejection, as unworthy of belief, of statement taken by claim agent of employer sued, held not misconduct,**

Jury's rejection, as unworthy of belief, of an unverified statement taken by claim agent of defendant employer, conflicting with testimony of person making the statement, *held* not misconduct, but within their rights.

**12. Trial ☞114—Appellant held not entitled to complain of argument as shrewd.**

Appellant *held* not entitled to complain of counsel's argument to jury, on ground that it was "shrewd," where there was no appeal to the passions or prejudices of the jury, and nothing inflammatory.

**13. Trial ☞114—Attorney entitled to give to jury his view of evidence and his conception of law.**

Attorney is entitled to give to jury his view of evidence and his conception of law.

**14. Appeal and error ☞207, 544(I)—Appellant failing to object to argument, and to reserve proper bill of exceptions, not entitled to complain.**

Appellant failing to object to argument, and to reserve proper bill of exceptions to it, *held* not entitled to complain on appeal.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Death ⊜⟿99(4)—$30,000 damages to widow and children held not excessive.**

Damages of $30,000 for negligent death, distributed among widow and her three. children, the former receiving $12,000 and the children each $6,000, *held* not excessive.

### On Motion for Rehearing.

**16. Appeal and error ⊜⟿379—Document lacking sureties does not constitute "appeal bond."**

Document lacking sureties does not constitute "appeal bond," in view of Rev. St. art. 2097.

[Ed. Note.—For other definitions, see Words and Phrases, Appeal Bond.]

**17. Appeal and error ⊜⟿392—Filing of bond is jurisdictional.**

Filing of appeal bond is jurisdictional, and cannot be waived by opposite party.

**18. Courts ⊜⟿23—Parties cannot confer jurisdiction by agreement.**

Parties to suit cannot confer jurisdiction upon court by agreement.

**19. Appeal ·and error ⊜⟿391(5)—Tender of new appeal bond on motion for rehearing will not be accepted.**

Tender by certain appellants on motion for rehearing of new appeal bond, to take the place of the original bond which was not correctly copied in the record, will not be accepted under Rev. St. art. 2104, where no application for a writ of certiorari to perfect the record was made, nor request made to file certified copy of original bond.

**20. Appeal and error ⊜⟿786—Appeal of codefendants, not made in good faith, but to subserve purposes of their codefendant employer, need not be considered.**

Appeal of codefendants, not made in good faith, but to subserve purposes of another appellant, their employer, need not be considered.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Josie Smith for herself, and as next friend of R. V. Smith and two others, against the International-Great Northern Railroad Company and the receiver, in which defendant company impleaded certain codefendants. Judgment for plaintiff against defendant company, and in favor of the latter against the two impleaded codefendants, and defendant company, the receiver, and such codefendants appeal. Affirmed.

S. B. Dabney and Walter F. Woodul, both of Houston, F. C. Davis, Marshall Eskridge and A. L. Matlock, all of San Antonio, for appellants.

Newton & Woods, Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

FLY, C. J. This is a suit for damages alleged to have accrued by the negligence of appellants in causing the death of Robert Van Smith, instituted by his widow, Josie Smith, for herself and as next friend of R. V. Smith, Margaret Smith, and Van Smith, minor children of Robert Van. Smith, deceased, and Josie Smith. It was submitted on 37 special issues, and on the answers judgment was rendered in favor of appellees for $30,000, and it was allotted, as to Josie Smith, $12,000, as to Van Smith, $6,000, as to Margaret Smith, $6;000, and as to R. V. Smith, Jr., $6,000. The railroad company interpleaded E. D. Worley, the engineer on the train that struck and killed Robert Van Smith, and Charles Willard, the fireman on the same train, and prayed for judgment over against them, and on the answers of the jury judgment was rendered against them for the same amounts rendered against the railroad company in favor of the last named.

[1] The judgment against the employés does not seem to have been seriously taken by either of the parties. Worley and Willard really gave no appeal bond, as they have no sureties to the bond, but no one seems to object to this, and a joint brief is filed by the Railroad Company and its two employés against whom it holds a judgment for $30,-000, and railroad company, receiver, engineer, and fireman have prevailing among them the utmost peace and harmony, and the vexed question of capital and labor seems to have been brought to an amicable solution. Appellees recovered no judgment against Worley and Willard, and the latter have no voice in this appeal. They are not in a position to present a complaint against any one. Not against appellees, because they have not perfected an appeal, and they are too friendly with the railroad company and receiver to have a grievance against them, and if they were not they are not in this court. No bond has been given to or by them. None of the propositions presented by Worley and Willard will be considered, and the propositions will be stricken from the brief and record. When appellants are referred to, the railroad company and receiver will be meant.

[2] The statement of facts shows that Robert Van Smith was killed at a crossing over appellant's track north of Buda, a station between San Marcos and Austin, by a train of the railroad company striking him while he was endeavoring to cross said track in an automobile. Both train and automobile were proceeding south towards San Antonio when the collision took place. It occurred on January 25, 1922, a very foggy morning. The jury found that the train was being operated at a negligent rate of speed, and that finding is supported by the facts. Witnesses swore that it was running very fast, so very fast that it could not be checked and stopped un-

til it ran past the station. After striking deceased the train ran about 1,900 feet and past the depot, to which it had to be backed. That run past the depot was made after the emergency brake had been applied, if the testimony of the engineer can be credited. The engineer admitted that he could have stopped the train running as it was in 200 feet, and he claimed that he did not stop because he desired to get aid for the dead man at the depot, and yet it was running with the emergency brake on until it passed the depot. The friction of the brakes against the wheels was so great that fire flew from them as the depot was passed. At the whistle post, a mile from the station, the whistle was sounded, but no whistle was blown for the crossing. The engineer admitted that no whistle was sounded except at the mile post. The crossing was one in constant use, as it is on the road between San Antonio and Austin. The statutory signal was omitted by the engineer at the crossing. The engineer and fireman did not keep the proper outlook as the crossing was approached. This was shown affirmatively by the engineer and fireman. The former said he did not see the automobile until after he struck it, and the fireman said that he was not keeping a lookout, and did not see it until after it was struck. The engineer swore:

"It is the duty of engineer and fireman to keep a lookout ahead of the engine while they are running; that is a part of their duty."

[3] Both the employés were negligent in not keeping a lookout. No audible signals were provided for the crossing, although the crossing was a much used and important one, and the testimony justified the finding that it was negligence to not protect the crossing with audible signals. The train was clearly beyond the control of the employés when it approached Buda, as clearly appears from the fact that it ran hundreds of feet with the emergency brakes on. The evidence showed that the automobile was running at an ordinary speed. The public highway along which deceased was traveling approached the railroad at such an angle that a driver in approaching the crossing would, in order to see a train approaching from the north, be compelled to turn and look back over his right shoulder. It was about dawn, a dark morning, with a heavy fog over everything. The vision of deceased was necessarily obscured, and no whistle was sounded nor audible signal given. It was a cold, foggy morning, and the evidence failed to show that deceased approached the crossing in a reckless or negligent manner, or that he failed to listen or look for a train. He was not shown to be guilty of negligence contributing to his death.

[4] Propositions 1, 2, 3, and 3–C are discussed through 53 pages of the brief, and there is no statement of the existence of the facts upon which the propositions are predicated. Decrees of federal courts are discussed, but what they are is not made known in any statement. If the present railroad company purchased the properties of the old railroad corporation, it is not shown in the statement when or where or by what authority the properties were sold. While the present rules have had a tendency to demoralize and destroy any intelligible mode of briefing, we think that there should be statements, under propositions of law, of the facts upon which the propositions are based.

[5] It is claimed by appellants that "no case of greater importance is pending," and if that be true, all the light of which the case is capable should be thrown upon each proposition. With other suits between appellants and the Texas Company, in which judgments have been obtained against appellants for $400,000, or the many other suits, this court has no concern, but must decide this case under the light thrown upon it by the briefs and the record. Under the meager facts stated in the brief of appellants, we are of opinion that this case is brought directly under the provisions of articles 6624 and 6625, Revised Statutes of Texas, and that, under the provisions of those acts, the railroad company bought the property and franchises of the former railroad company subject to just such claims as that of appellees. The dissertation upon the different laws as to railroads is interesting and instructive, but does not bear with peculiar weight and force on this case, as disclosed by the brief of appellants. The court had jurisdiction of the cause and the parties. I. & G. N. Railway v. Anderson County, 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807. The orders of the federal court show that appellant railroad company assumed payment of the obligations of the receivership, among which this claim must be placed. These propositions 1, 2, 3, and 3–C, are overruled.

[6] The fourth and fifth propositions complain of the action of the court in refusing to permit the receiver and railroad company "and their codefendants, Worley and Willard, to peremptorily challenge 12 jurors in selecting the jury in this case instead of 6." Worley and Willard are "codefendants," and yet they were brought into the suit by the receiver and railroad company and judgment asked and obtained against them. They are denominated "codefendants," and yet, in another part of the brief, it is said that there is a conflict of interest between them. One object and aim in making the employés parties is disclosed in these propositions—that of obtaining more challenges for the real defendant in the case. There was no antagonism, however, arising from the suit between the first and last defendants. The act of making the engineer and fireman parties cemented the union between them and the re-

ceiver and railroad company, for any testimony given by them that tended to exonerate them from a charge of negligence tended to exonerate the receiver and the corporation. If the employés did not run the train at a high rate of speed, the receiver and corporation did not. If the employés kept a lookout, the employers kept a lookout. Their interests were inseparable, welded together by the citation to the employés. The latter gave no appeal bond, and their attorney appends their brief to that of their so-called antagonists. The attorney's fee of the attorney for Worley and Willard was guaranteed by attorneys for appellants, and the cause of action was barred as to the employés, but they did not plead it. The entente cordiale was perfect between the appellants and the employés, and advice was given by counsel for appellants as to how the answer should be drawn, and the advice was followed. Appellants under no proper theory of law could use its employés to double the number of challenges permitted them by statute. It is not claimed by appellants, nor is it incorporated in the bill of exceptions, that appellants had sustained any injury. It is just the bare claim that appellants should have been allowed to double their statutory challenges because they made their employés defendants in the suit and sought a judgment against them. Worley and Willard did not demand any challenges, but appellants wanted their challenges, and claim error because the court refused such challenges. If such antagonism existed between appellants and their employés, we fail to understand by what right or authority appellants claim the privilege of challenging six jurors for them. Yet an attorney for appellants said in the lower court, and it is embodied in a bill of exceptions:

"The defendant railroad company, if the defendants Worley and Willard had been permitted to exercise challenges, or, in other words, if the codefendants had been permitted to exercise 12 challenges, the jurors mentioned in the exception of the defendants Worley and Willard, in addition to the challenges and strikes exercised by the defendants, as shown by the lists filed, would have been stricken."

No bill of exceptions was reserved by the employés to the refusal to allow appellants extra challenges. Appellants got all the challenges to which they were entitled, and only their solicitude for the two men against whom they obtained a judgment for $30,000 has governed their actions, possibly, for the attorney at the time stated that:

It "would be manifestly unfair to settle a possible $100,000 judgment * * * on these two defendants (Worley and Willard), and not giving them the right of having voice; we say it is fundamental, your honor, this right, and we shall satisfy ourselves, etc."

The court held that Worley and Willard were not entitled to the extra challenges, and the bill of exceptions was taken, not by them, but by appellants.

Propositions 6 to 20, except proposition 15, relate to the evidence as to negligence on the part of appellants and contributory negligence, and are disposed of by the conclusions of fact of this court. They are overruled.

[7] The fifteenth and twenty-sixth to thirty-fourth propositions, inclusive, involve complaints at the action of the court in refusing to present 28 special issues to the jury in addition to the 37 presented by the court. Every conceivable issue arising from the facts was presented by the court, and the special issues were properly denied. Among the 10 were such so-called issues as:

"You are instructed that, as shown by the evidence in this case, there was no obstruction preventing Robert Van Smith from seeing the approaching train just before the point of intersection."

And:

"In considering question or special issue you are instructed: A railroad track is of itself a proclamation of danger imposing upon the traveler approaching a railroad crossing a positive duty of using care to avoid trains and the man who, knowing it to be a railroad crossing, approaches it as if it were not dangerous is not exercising ordinary care."

And:

"All men in possession of their faculties are charged with knowledge that a railroad is a dangerous place, and the law will not permit them to go upon a track even at a public highway without being charged with a recognition of the danger attending such action and the use of such care as ordinary prudence would dictate in so doing."

Taken in connection with the other 25 issues, the 3 charges copied amounted to an instruction to find for appellants. Every issue bearing upon the facts was presented to and answered by the jury.

[8, 9] Propositions 36, 37, 38, and 39 relate to misconduct of the jury in considering matters not presented in the evidence. In regard to the height of the rails at the crossing above the adjacent surface, there was evidence to that effect by the witness G. A. Moore, who swore:

"The railroad track is just a little higher there than the roadbed of the public highway; it is from three to five inches, something like that higher than the surface of the road—3 to 4 inches—just elevated a little bit; just a little bit higher than the roadbed of the highway at the crossing."

That fact was undisputed, and it was legitimate for the jury to discuss that fact, and draw the deduction that if an automobile was driven rapidly over the crossing it would be wrecked. Only 4 of the 12 jurors,

all of whom were interrogated, heard any declarations by a juror as to the height of the rails gained from his own personal knowledge, and the court was justified in holding that no such declarations were made. In proposition 37 it is not claimed that any juror stated that the rails of the railroad were 6 inches above the highway level, but merely "that some of the jurors incorrectly and improperly argued that it was shown that the rails of the railroad track stood 6 inches higher than the level of the highway." The argument of jurors in the jury room cannot be censored, and made to conform to the ideas of the parties, and especially when it does not appear that any one was influenced by it, but rather that it made no impression.

[10] In regard to a discussion of attorneys' fees and a consideration of them in arriving at a verdict, 10 of the jurors stated that they heard no discussion of attorneys' fees in the jury room, and the juror Farr, who seems to have been the one who heard all the improper things, testified:

"I didn't know who it was that mentioned attorneys' fees. I think it was only mentioned casually; there was no general discussion of it. * * * I don't remember when the discussion took place; there wasn't any discussion about it; it was only just mentioned; I don't remember when it was. It might have been before or after the verdict; I couldn't say when it was."

The juror further stated that he tried the case according to the evidence as he heard it from the witness stand. The only other juror who testified that he heard attorneys' fees mentioned was W. E. Brucks, and he did not know who mentioned it, and that it had no effect upon his verdict. None of the other 10 heard attorneys' fees mentioned. The court did not abuse its discretion in disregarding such an attack on the verdict. The facts in the case of Traction Co. v. Mendez (Tex. Civ. App.) 199 S. W. 691, cited by appellants, were very different from the facts in this case. In the Mendez Case there was a general discussion of the attorneys' fees, and it was clearly shown beyond controversy that it entered into and influenced the size of the verdict.

[11] The same complacent juror Leroy Farr testified:

That "there was discussion in the jury room about the weight that should be given to the statement of Piland that was taken and signed in the presence of his wife by the claim agent. They didn't give it much weight because it had not been signed before a notary public."

The statement of Piland was not accepted by the jury, but was undoubtedly considered and rejected as not worthy of belief. They had to consider it in order to say why they rejected it. They had a perfect right to believe the testimony of Piland in court rather than an ex parte statement, unverified, taken by a claim agent in the interest of his employer. There was no improper conduct of the jury shown in their treatment of the statement. The cited case of Wells, Fargo & Co. v. Bollin (Tex. Civ. App.) 212 S. W. 283, has no bearing whatever on this point. The jury had the right to reject the statement; it was not sacrosanct.

[12, 13] Propositions 41, 42, 43, and 44 assail the closing argument of one of the counsel for appellees. We see no impropriety in the argument. It may have been "shrewd" as stated by appellants, it may have convinced the jury of the tenability and force of his position, but attorneys are employed to deliver shrewd arguments and to influence juries if they can. There was no appeal to the passions or prejudices of the jury. The attorney had the right to give his view of the evidence, and his conception of the law to the jury. There was nothing inflammatory about the argument.

[14] While we think there was no impropriety in the argument, appellants are in no position to object to it, because no objection was made to the argument, and no proper bill of exceptions reserved to it. Uvalde Co. v. O'Brien (by this court), 265 S. W. 1083.

[15] It is not insisted that the verdict is excessive and it is not in view of the fact that it divided the amount among the widow and three minor children.

The other propositions are merely repetitions of propositions disposed of herein, and they are overruled.

The judgment is affirmed.

## On Motion for Rehearing.

The employés of the railway company, E. D. Worley and Charles M. Willard, have brought to this court a certificate that the names of the sureties on their appeal bond, one of whom is counsel for the receiver and railway company, had been omitted through error in not copying the names of the sureties in making up the transcript for the appeal to this court.

[16-18] Under the provisions of article 2097, Revised Statutes, a cost bond on appeal must have "two or more good and sufficient sureties," and the only exception to that requirement is where a surety company makes the bond. No document, although it may comply with the requirements of the statute in every other respect, is an appeal bond in the absence of the sureties. Such a paper would have no effect whatever, and no court has ever held that, where there is no bond, that the opposite party can waive the filing of a bond. The filing of a bond is jurisdictional, and the parties to a suit cannot give jurisdiction to a court by agreement. From the case of Hooper v. Brinson, 10 Tex. 296, to the present time, it has been held that

two sureties are required to give the appellate court jurisdiction. Railway v. Mercantile Co. (Tex. Civ. App.) 181 S. W. 270.

[19] Under the provisions of article 2104, Rev. Stats., an appeal bond that is defective may be amended by filing a new bond "on such terms as the court may prescribe." If the appeal bond of the appellants named was executed with two sureties, as required by statute, and such bond was not copied into the record of appeal, appellants should have applied to this court for a writ of certiorari to perfect the record, but no such application was made. In a motion for a rehearing, this court is not asked to have the original bond certified to this court filed and considered herein, but without leave of. the court a new bond is tendered of date after the rendering of the opinion of this court. If it be true· that there were two sureties on the original bond, we do not understand that the bond was defective and article 2104, in regard to defective bonds, would have no application. No request has been made to file a certified copy of the original bond in this court. The new bond will not be filed.

[20] Giving appellants Worley and Willard the benefit not of a doubt,, for we have none as to the bond which has never been and doubtless never will be filed in this court, we might refuse to consider their appeal in this case because it is evident that their appeal has not been made in good faith. It is ably contended by the receiver and railway company that neither of their employés were guilty of negligence, and, if so, those appellants ought not to be held liable to the others. In the case of Hogsett v. Northern Tex. Traction Co., 55 Tex. Civ. App. 72, 118 S. W. 807, the facts are not given, but it appears that the employé who was made a party by the defendant was not acting along the line of his employment in charging a passenger with theft, and there is nothing to show that the cause against the employé was not a bona fide one. We conclude that the two defendants in that case were acting in good faith. There is nothing to indicate that counsel for the Traction Company were counsel for the conductor, inspiring and dictating his answer; nothing to show that an appeal bond was filed with counsel for both parties on the bond; nothing to show that parties defendant filed joint briefs; nothing to show that the railway company was paying the fee of the attorney for the employé˙and that the parties were acting together in every part of the case. We have seen no case presenting the aspects of the one before this court. There was no controversy between the corporation and its employés in this case. There was in truth and in fact only one defendant in this case. This court is referred to bill of exceptions No. 1 as showing the objection was urged by

Worley and Willard to a refusal of the court to allow them to challenge six jurors. That bill shows that Worley and Willard, neither in person nor by their counsel, made the objection, but it was made by one of the counsel for the receiver and the railway company. Even nominal counsel for Worley and Willard was paid by the railway company or its counsel. Bill of Exceptions gives no reasons for their demand for a panel of 30 men instead of 24. The record fails to show that Worley and Willard ever objected to the refusal of the court to allow them a challenge of 6 men. The six challenges allowed were used by the railway company without objection on the part of Worley and Willard, and no bill of exceptions was taken to that action. Worley and Willard were not made defendants in good faith, but to subserve the purposes of the railway company.

The motions for rehearing are overruled.